IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 29, 2025 Session

**GLENN LARRY BROWN, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 120770      G. Scott Green, Judge**

_____

**No. E2024-00139-CCA-R3-PC**

_____

The Petitioner, Glenn Larry Brown, Jr., appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief from his convictions for possession with the intent to sell or deliver .5 gram or more of cocaine within 1,000 feet of a school, possession with the intent to sell or deliver a controlled substance analogue, possession of marijuana, unlawful possession of a firearm having been convicted of a felony, and two counts of unlawful employment of a firearm. The Petitioner alleges that the trial court erred by depriving him of his right to testify at the trial and that the post-conviction court erred by denying relief on his ineffective assistance of counsel claim. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ, J., and KRISTI M. DAVIS, Sp. J., joined.

Chelsea C. Moore, Knoxville, Tennessee, for the Appellant, Glenn Larry Brown, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions relate to a traffic stop on March 28, 2016. The Petitioner was driving his mother-in-law's car, and the codefendant was a passenger. The Petitioner consented to a search of the car and told officers that a handgun in the car was not his. Officers arrested the Petitioner and the codefendant after finding the handgun

and drugs. *See State v. Glenn Brown and Thomas Byrd*, No. E2019-01618-CCA-R3-CD, 2021 WL 2477064, at *1 (Tenn. Crim. App. June 17, 2021), *perm. app. denied* (Tenn. Nov. 17, 2021). The Petitioner and codefendant were tried jointly, and a Knox County jury convicted the Petitioner of firearm and drug charges and the codefendant of drug charges. The Petitioner received an effective thirty-year sentence. Their convictions were affirmed on appeal. *Id.* The Petitioner filed a petition for post-conviction relief, alleging the ineffective assistance of trial counsel and raising a separate claim for the first time in his appellate brief that the trial court erred by depriving him of his right to testify. The Petitioner also alleged that the effect of cumulative errors by trial counsel deprived him of a fair trial.

At the post-conviction hearing, trial counsel testified that she was appointed to represent the Petitioner in April 2017 and that the trial was set for June. Counsel noted that she was the third or fourth attorney appointed to represent the Petitioner. Counsel said that she hired an investigator to assist in reviewing discovery and to participate in her discussions with the Petitioner. Counsel said that she reviewed discovery with the Petitioner and filed various pretrial motions. Counsel recalled that the Petitioner never disputed that he had the handgun and that he admitted to officers that a handgun was in the car during the traffic stop. Counsel said her defense strategy was to build credibility with the jury by acknowledging "on the front end" that the Petitioner had the handgun, hoping the jury would believe that the codefendant was responsible for the drugs found in the car. Counsel thought that because the Petitioner did not have an explanation for the handgun's presence in his car, "there was no way [the Petitioner] was going to prevail" on the firearm charges. Counsel acknowledged telling the jury that they would hear why the Petitioner had a handgun but that she never presented any evidence to explain its presence.

Trial counsel testified that during the *Momon* hearing at the trial, the Petitioner said he wanted to testify despite having had "many, many discussions [with her] where [the Petitioner] was adamant that he did not want to testify." *See Momon v. State*, 18 S.W.3d 152 (Tenn. 1999). Counsel said that she met with the Petitioner after the hearing and before the trial recommenced and that the Petitioner had reconsidered and decided not to testify. Counsel did not know "what [the Petitioner] could have testified to that would have made any difference[.]" Counsel said she would never prevent a client who wanted to testify from taking the stand. Counsel acknowledged that she did not ask the trial court to conduct a second *Momon* hearing to reflect the Petitioner's decision not to testify. Counsel did not recall telling the jury in closing argument that the Petitioner had a handgun. On cross-examination, counsel reiterated that "if [the Petitioner] had wanted to testify, [he] would have testified."

The Petitioner testified that he told trial counsel that he wanted his wife and mother-in-law to testify at the trial. The Petitioner said that his wife could testify that the

Petitioner did not have a handgun or drugs in the car before picking up the codefendant. The Petitioner said he told counsel that the handgun and drugs were not his. The Petitioner stated that counsel visited him a couple of times at the jail but did not review the discovery materials with him. The Petitioner said that he had wanted to testify at the trial but that counsel advised against it. The Petitioner further stated that counsel never spoke to him after the *Momon* hearing, that he was surprised when he was not called to testify at the trial, and that he did not agree with the defense strategy of conceding that he possessed the handgun.

The Petitioner testified that, had he testified at the trial, he would have said that he lived with his mother-in-law and that he never had guns or drugs in her house. The Petitioner said that, at the time of his arrest, his wife was eight months pregnant and that he was working two jobs. The Petitioner stated that his wife and his mother-in-law had helped him turn his life around. The Petitioner said the codefendant, whom the Petitioner described as being like a brother to him, called and asked if he and the Petitioner could get together and "chill." The Petitioner said he went to see the codefendant after taking his wife to work. The Petitioner described the codefendant as "looking crazy" and arguing with his girlfriend. The Petitioner said that he and the codefendant got into the car, that the Petitioner drove, and that they went to see "Erica." After leaving Erica's house, the Petitioner and the codefendant drove around Knoxville while drinking alcohol. The Petitioner said that, during the traffic stop, he gave a false name when the officer asked him for identification. The Petitioner said that he first saw the handgun when the codefendant got out of the car. The Petitioner said he got out of the car, told the officer that there was a handgun in the car that was not his, and then gave the officers permission to search the car. The Petitioner stated that he knew the codefendant was a drug dealer but was unaware that the codefendant brought drugs into the car.

On cross-examination, the Petitioner testified that he spoke to trial counsel five or six times before the trial and that he met with her investigator an additional three times. The Petitioner acknowledged that the arresting officer testified that he saw the Petitioner and the codefendant reaching around in the car's backseat and that the drugs were found under the back of the passenger seat. The Petitioner also acknowledged that "it looked like I placed the gun [in the car]" because the handgun's grip was leaning toward where the Petitioner had been sitting.

The Petitioner's mother-in-law testified that the Petitioner was driving her car at the time he was arrested. She stated that the Petitioner lived with her and that she never saw drugs or guns in the Petitioner's bedroom or in her car after the Petitioner had used it.

Codefendant's counsel testified that he found no legal basis for challenging the traffic stop and noted that his client's defense was antagonistic to the Petitioner's because

the handgun was visible and located in a console between the two defendants. Codefendant's counsel said he argued that the handgun belonged to the Petitioner because the handgun's grip was oriented toward the Petitioner. Codefendant's counsel stated that both the codefendant and the Petitioner said during the *Momon* hearing that they wanted to testify at the trial.

The post-conviction court denied relief, finding that the Petitioner failed to prove his ineffective assistance of counsel claim by clear and convincing evidence. The court found the Petitioner failed to prove that he suffered prejudice as a result of any alleged deficient performance of counsel. This appeal followed.

# I

## Denial of Right to Testify by Trial Court

The Petitioner alleges, for the first time on appeal, that the trial court erred by denying him his constitutional right to testify at the trial. He further alleges that the State has waived the defense of waiver by its failure to raise the waiver defense previously. The State argues that the Petitioner has waived his stand-alone *Momon* claim for failing to present it to the trial court or to the post-conviction court.

The Petitioner has waived his stand-alone *Momon* claim by raising it for the first time in this appeal. *See* T.C.A. § 40-30-106(g) (2018); *Mobley v. State*, 397 S.W.3d 70, 104 (Tenn. 2013). The State has not waived its defense of waiver because the State cannot be expected to raise waiver until the Petitioner raises the issue the State says is waived. Because the Petitioner failed to raise this issue before the trial court or the post-conviction court, the Petitioner's stand-alone *Momon* claim is waived. However, to the extent that the Petitioner's *Momon* claim relates to his ineffective assistance of counsel claim, we will consider it in that context. The Petitioner is not entitled to relief on this basis.

# II

## Ineffective Assistance of Counsel Claim

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn.

1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner alleges that the post-conviction court erred by denying relief on his claims that his trial counsel was ineffective for (1) failing to conduct an appropriate pretrial investigation and motion practice; (2) failing to provide him with an opportunity to testify; and (3) conceding in opening argument that the Petitioner possessed the handgun. The State argues that the post-conviction court did not err in denying relief.

### 1. Pretrial Investigation and Motion Practice

The Petitioner alleges that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance of counsel when she filed a motion

for speedy trial, indicating to the trial court that she was prepared to go to trial on June 19, 2017, while her motion to suppress and other motions, filed five days before that date, were still pending. The Petitioner claims this demonstrated that counsel was not candid with the court and prejudiced the Petitioner by delaying the trial, which commenced three months later on September 6. The State argues that the Petitioner has failed to identify how counsel's pretrial motion practice or alleged lack of investigation prejudiced him.

The post-conviction court accredited trial counsel's testimony and found that counsel's pretrial motions were not frivolous, that they were not filed to deliberately delay the trial, and that the Petitioner was not prejudiced as a result of the "*de minimis* delay" of the trial. While the court did not specifically address any lack of investigation, the court found and the record reflects that counsel filed multiple pretrial motions and that the Petitioner met with counsel six times and the investigator three times. A court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley*, 960 S.W.2d at 578; *see Fields*, 40 S.W.3d at 456-57.

The record does not preponderate against the post-conviction court's findings. The Petitioner offered no evidence that demonstrated how he was prejudiced in the results of the trial by the delay in the trial or by the filing of the pretrial motions. *See Strickland*, 466 U.S. at 694 (to establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The record supports the court's determination that the Petitioner failed to demonstrate prejudice on this issue by clear and convincing evidence. The Petitioner is not entitled to relief on this basis.

### 2. *Opportunity to Testify*

The Petitioner alleges that the post-conviction court erred in denying relief on his claim that he never waived his right to testify at the trial. He argues that trial counsel's failure to call him as a witness was deficient performance, prejudiced his defense, and deprived the jury of an opportunity to hear the Petitioner's testimony. The Petitioner alleges that, during the *Momon* hearing, he told the trial court that he wanted to testify and that no evidence in the trial record supports counsel's assertion that the Petitioner changed his mind about testifying. The State argues that the post-conviction court accredited counsel's testimony that the Petitioner waived his right to testify at the trial.

During the *Momon* hearing, the Petitioner was asked, "And have you made a decision today as to whether or not you intend to testify?" to which he answered, "I will." The post-conviction court noted that the Petitioner's testimony at the post-conviction hearing about wanting to testify at the trial was "in direct conflict with that of trial counsel." The court accredited trial counsel's testimony and found that the Petitioner,

during the *Momon* hearing, "clearly, and without equivocation" understood that the decision to testify was his choice. Counsel testified that the Petitioner had never planned to testify, that she was surprised that he told the court during the *Momon* hearing that he wanted to testify, but that before the trial resumed, the Petitioner reconsidered his decision and decided not to testify.

"[T]he right to testify at one's own trial is a fundamental right . . . [that can] only be waived personally by the defendant." *Momon*, 18 S.W.3d at 161 (citation omitted). "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 161-162. "[T]he mere failure to follow [the *Momon*] guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant. *Id.* at 162. Although the Petitioner testified at the *Momon* hearing that he wanted to testify, trial counsel testified that the Petitioner personally waived his right to testify. The Petitioner's right to testify was explained to him by the trial court during the *Momon* hearing, and the court determined the Petitioner understood his right to testify.

Whether the Petitioner personally waived his right to testify was a credibility issue, and the post-conviction court accredited the testimony of trial counsel on this issue. The record does not preponderate against the post-conviction court's determination. The record supports the court's conclusion that the Petitioner failed to meet his burden to demonstrate by clear and convincing evidence that counsel deprived him of the right to testify. The Petitioner is not entitled to relief on this basis.

### 3. Opening Statement

The Petitioner alleges that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance by stating in her opening statement, "And you'll hear a reason as to why [the Petitioner] had a gun in the car, that he had been concerned for his safety based on something that had happened a few weeks before, where he had actually filed a police report and was concerned for his safety." According to the Petitioner, he had always maintained that he never possessed the handgun, and counsel misstated facts to the jury when she stated that the handgun belonged to him. The Petitioner alleges that counsel's concession and failure to substantiate her promise to explain why the Petitioner had the handgun made a guilty verdict a "foregone conclusion." The Petitioner relies on *State v. Zimmerman*, 823 S.W.2d 220 (Tenn. Crim. App. 1991), for the proposition that the jury may view unsupported claims as a misrepresentation that has adverse effects on a defendant. The State argues that the court did not err in denying relief because counsel's decision to concede that the Petitioner possessed the handgun was a reasonable strategic decision

designed to build credibility with the jury. The State contends that counsel's strategy was reasonable, given the Petitioner's admission to officers that a handgun was in the car. The State also notes that the Petitioner has failed to demonstrate that this defense strategy affected the outcome of the proceedings, as "*Zimmerman* does not mandate that every unfulfilled promise of defense counsel in opening statement warrants a finding of ineffectiveness." *See Johnny Eugene Johnson v. State*, No. 01C01-9508-CC-00247, 1996 WL 580634, at *4 (Tenn. Crim. App. Oct. 10, 1996), *perm. app. denied* (Tenn. Mar. 10, 1997).

The post-conviction court noted that although this claim "on its face has some merit," it does not entitle the Plaintiff to relief when considered within the context of the entire record. The court found that the Petitioner's "culpability for possession of the firearm was a foregone conclusion given the facts within this record" and concluded that counsel's admission that the Petitioner possessed the handgun "merely stated a conclusion which any rational person who listened to the evidence within this case would have concluded." According to the court, "the uncontroverted evidence proved that the firearm was found in plain view on the console of the car between [the Petitioner] and [the codefendant], and within arm['s] reach of either man."

Trial counsel stated in opening statement that the Petitioner possessed a handgun for safety concerns, facts that were not in the record and were never presented or developed at the trial. At the post-conviction hearing, counsel acknowledged that she failed to present evidence to the jury explaining why the Petitioner had a handgun. However, despite counsel's failure in this regard, the Petitioner has failed to demonstrate how counsel's alleged deficiency on this issue prejudiced the Petitioner's defense.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. At the trial, the State had strong evidence against the Petitioner for the firearm charges. The Petitioner admitted to officers that a handgun was in the car. The handgun was located within reach of the Petitioner. The handgun's grip was oriented toward the Petitioner. The Petitioner was driving his mother-in-law's car. Furthermore, any evidence that the Petitioner possessed a firearm because he "was concerned for his safety" would not have been a defense to the firearm charges. The relevance, and therefore admissibility, of such evidence is not demonstrated by the record. *See* Tenn. R. Evid. 401, 402. Counsel's defense strategy and argument focused on acquittal of the felony drug charges, some of which carried mandatory minimum sentences of twenty-five years. *See* T.C.A. §§ 39-17-417(c), 39-17-432. The record supports the post-conviction court's conclusion that the Petitioner failed to meet his burden to demonstrate prejudice on this issue by clear and convincing evidence. The Petitioner is not entitled to relief on this basis.

## III

### Cumulative Effect of Deficiencies of Performance

The Petitioner argues that he is entitled to relief based upon the cumulative effect of trial counsel's multiple instances of deficient performance. He argues that he was prejudiced by the cumulative effect of counsel's multiple performance deficiencies.

"[W]hen an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an ineffective assistance of counsel allegation. *Timothy Terell McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *Id.* The question is whether counsel's deficiencies "cumulatively prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *Id.* In the present case, the Petitioner has failed to demonstrate that multiple instances of deficient performance occurred. In the absence of such a showing, relief based upon the prejudicial effect of multiple instances of deficient performance is not available.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

s/ **Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE